UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17-cv-350-MOC-WCM

| | |
|---|---|
| MARY MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | **ORDER** |
| ) | |
| NAKISHA GARRETT, et al., ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** comes before the Court on a Motion to Dismiss for Failure to State a Claim by Defendant Wally Wazan. (Doc. No. 39).

I.     **BACKGROUND AND PROCEDURAL FACTS**

This case arises out of the alleged repeated sexual assault of Plaintiff Mary Martin by Defendant Wally Wazan while Martin was a prisoner in the custody of the North Carolina Department of Public Safety ("NCDPS"). Martin alleges that Wazan had unfettered access to Martin through his job with the North Carolina Department of Commerce and that he used this access and his position of control over Martin to sexually assault her more than thirty times. Martin alleges that, in addition to the sexual assaults, Wazan physically assaulted Martin in non-sexual ways, including, but not limited to, slapping Martin across her face. Martin asserts claims against Wazan under 42 U.S.C. § 1983, as well as common law claims for assault and battery and intentional infliction of emotional distress. Wazan has filed a motion to dismiss Plaintiff's claims, arguing that the statute of limitations bars Plaintiff's claims. For the following reasons, the Court will the deny the motion to dismiss.

1

Martin is, and at all material times has been, an inmate in the NCDPS system. (Doc. No. 31 at ¶ 2: Am. Compl.). From at least 2012 through 2015, Martin was incarcerated at the North Carolina Correctional Institute for Women ("NCCIW") in Raleigh, North Carolina. (Id.). At all relevant times, Wazan worked for the North Carolina Department of Commerce. (Id. at ¶ 7). Wazan's job consisted of supervising female inmates at NCCIW who were performing work for the Department of Commerce while incarcerated. (Id.). In 2012, Martin accepted a paid job with the Department of Commerce's Travel and Tourism program at NCCIW. (Id. at ¶ 12). Wazan served as Martin's supervisor. (Id.).

### A. PLAINTIFF'S ALLEGATIONS IN HER AMENDED COMPLAINT

Martin alleges the following facts in her Amended Complaint, and Wazan denies these allegations: Martin alleges that, from the beginning of her working relationship with Wazan, Wazan repeatedly made inappropriate comments to Martin. (Id. at ¶ 14). For example, Wazan told Martin, "You're sexy as hell," and "I love your eyes." (Id.). These comments made Martin uncomfortable. (Id.). Martin alleges that after she endured several months of these inappropriate comments, Wazan escalated his abusive conduct. Wazan first began touching Martin inappropriately. (Id. at ¶ 15). Wazan approached Martin while she was isolated and alone in the bulk mail trailer and said, "I'm really attracted to you and afraid you're going to get me in trouble. Do you care that I'm married? Because I am afraid once I start with you I won't be able to stop." (Id.). Wazan then demanded that Martin "stick [her] finger inside of herself." (Id. at ¶ 16). Scared of what would happen if she refused, Martin complied with Wazan's demands. (Id.). Wazan then grabbed Martin's finger and put it inside his mouth before leaving the trailer. (Id.).

Wazan continued to escalate the cycle of abuse for several months.  First, Wazan coerced Martin into performing oral sex on him—again, at times when he had her isolated and alone by virtue of his position as her supervisor.  (Id. at ¶ 17).  In addition to physically threatening her, Wazan used his status as Martin's supervisor to force her to appease his sexual desires.  For example, Wazan regularly told Martin she would lose her job if she did not comply with his demands.  (Id.).  Wazan also threatened to get Martin in trouble at the jail if she told anyone of his actions or failed to comply with his demands.  (Id. at ¶ 16).

Martin alleges that, eventually, Wazan escalated his abusive actions again.  Wazan began forcibly raping Martin during and after her shifts.  (Id. at ¶ 18, 19).  Wazan controlled Martin's work schedule, and he used this power to isolate Martin so he could rape her time and time again.  (Id. at ¶ 19).  The rapes occurred between two and five times per week over several months.  (Id. at ¶ 22).

Wazan's controlling, violent behavior only worsened as time passed.  When Wazan learned that Martin was in a relationship with a fellow inmate at NCCIW, he told Martin he "refuse[ed] to share [her], especially with a woman."  (Id. at ¶ 23).  Wazan then smacked Martin across her face.  (Id.).  From that point forward until Martin was transferred to a different jail, Wazan repeatedly assaulted Martin both sexually and non-sexually, causing Martin to fear for her life.  (Id. at ¶¶ 24–25).

**B. THE PENDING ACTION IN THIS COURT**

Martin filed this action on December 22, 2017, naming as Defendants the NCDPS and several of its employees as Defendants.  The Original Complaint did not name Wazan as a

3

Defendant.[1]  On the day before the lawsuit was filed, December 21, 2017, the North Carolina Department of Commerce entered into a Tolling Agreement with Martin.  The Tolling Agreement provides as follows:

> The NC Department of Commerce, on behalf of its employee Wally Wazan, and Ms. Mary Martin ("the Parties"), by and through her attorney Aaron Mayer, agree that, beginning December 19, 2017, any applicable statute of limitation and/or repose relating to any claim or demand between the Parties shall be tolled and will not begin again until either party terminates this agreement by advising the other party in writing, return receipt requested that this tolling agreement is no longer in effect.  When this tolling agreement is no longer in effect, applicable statutes of limitation and/or repose shall run again as normal, excepting the fact that any days from December 19, 2017 to the date this agreement is terminated shall not count towards the calculation of any statute of limitation or repose.

(Doc. No. 71–1).  Martin and Department of Commerce Chief of Staff George Sherill signed the Tolling Agreement, but Wazan did not sign it.

In October 2018, Martin filed an Amended Complaint, naming Wazan as a Defendant and asserting claims against him specifically.  On December 17, 2018, Wazan filed the pending motion to dismiss, arguing that the claim against him is barred by the applicable statute of limitations.  Wazan contends that the Tolling Agreement is not binding because he was not aware of it, he did not sign it personally, and the Department of Commerce lacked authority to bind him to it.  The Court has now held a hearing on the motion to dismiss, and the motion is ripe for disposition.[2]

## II.    STANDARD OF REVIEW

---

[1] The Original Complaint was filed within the statute of limitations.  If Wazan had been named as a Defendant at that time, there would be no dispute regarding the statute of limitations.  The Court takes judicial notice that Martin was represented by attorney Aaron Meyer when the Original Complaint was filed.  On January 11, 2019, Meyer filed a motion to withdraw as counsel on the ground that South Carolina had suspended his bar license on August 21, 2018. (Doc. No. 41).  This Court granted his motion.  (Doc. No. 47).

[2] In the interest of brevity, the Court does not set forth the entire procedural background here.

4

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotations and alterations omitted.). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Id. (quoting Twombly, 550 U.S. at 556). In determining whether a complaint meets this standard, "the court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

In sum, the question before the Court on a motion to dismiss under Rule 12(b)(6) is "'not whether [the defendant] will ultimately prevail' ... but whether [the] complaint was sufficient to cross the federal court's threshold." Woods v. City of Greensboro, 855 F.3d 639, 652–53 (4th Cir. 2017), cert. denied sub nom. City of Greensboro, N.C. v. BNT Ad Agency, LLC, 138 S. Ct. 558 (2017) (quoting Skinner v. Switzer, 562 U.S. 521, 529–30 (2011)). Defenses based on statutes of limitations are considered affirmative defenses, and the Court must only dismiss claims on such grounds when "all facts necessary to the affirmative defense clearly appear[] on the face of the complaint." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (internal citations omitted).

### III. DISCUSSION

In support of the motion to dismiss, Wazan first argues that Martin's claim is time-barred because the Amended Complaint (which names Wazan as a Defendant for the first time) was not filed within the applicable three-year statute of limitations and does not relate back to the filing date of the Original Complaint. Wazan also argues that the Tolling Agreement is not binding on him due to his lack of knowledge and consent at the time of its signing. For the following reasons, the Court rejects both assertions.

**A. Whether Martin's Amended Complaint Relates Back to the Original Complaint.**

It is undisputed that the applicable statute of limitations for Martin's claims is three years from the event giving rise to the claim. See N.C. GEN. STAT. § 1-52(5), (19). The parties agree that the Original Complaint was filed within the limitations period. Martin alleges in her Amended Complaint that Wazan raped and abused her repeatedly through at least March 2015. Thus, the earliest date on which the statute of limitations could have possibly run was in March 2018.[3] Martin filed her Original Complaint in December of 2017. Thus, if the Amended Complaint relates back to the Original Complaint, the claims in the Amended Complaint were asserted within the statutory limitations period.

Rule 15 of the Federal Rules of determines when an amended pleading relates back to the original pleading's filing date. Rule 15(c) states:

Relation Back of Amendments.

(1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;

---

[3] Martin does not concede that the statute of limitations actually ran in March of 2018.

>   (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>
>   (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>   (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
>   (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c). Thus, under subsection (C), an amended pleading that changes the parties to the case or names a new party relates back to the original filing if: (1) the added party received notice of the action within the time prescribed for service under Rule 4; (2) the added party will not be prejudiced in defending the action on the merits; and (3) the added party knew or should have known they would have been sued but for a mistake. See id.

The Fourth Circuit has clarified that the focus of Rule 15 is on the notice and prejudice to the added party and not on the type of mistake that resulted in omission of the party in the original pleading. "The Rule's description of when such an amendment relates back to the original pleading focuses on the notice to the new party and the effect on the new party that the amendment will have." Goodman, 494 F.3d at 470–71 (emphasis in original) (citing FED. R. CIV. P. 15(c)(3)(A)–(B)); see also Petty v. Byers, No. 1:16CV237, 2017 WL 870468, at *13 (W.D.N.C. Feb. 1, 2017), report and recommendation adopted, No. 1:16-CV-00237-MR-DLH, 2017 WL 872648 (W.D.N.C. Mar. 3, 2017) (citing Goodman for the proposition that the proper analysis under Rule 15 is on the notice and prejudice to the added party, not the type of mistake

made).  "These core requirements preserve for the new party the protections of a statute of limitations."  Goodman, 494 F.3d at 470.  Wazan argues in his motion to dismiss that Martin's Amended Complaint cannot relate back because Martin's mistake was not a mere "misnomer." (Doc. No. 40, p. 6–9).  Wazan cites Fourth Circuit cases from the 1980s and 1990s and cases from outside the Fourth Circuit to support this argument.  (Doc. No. 40) (citing Western Contracting Corp. v. Bechtel Corp., 885 F.2d 1196 (4th Cir. 1989); Rennie v. Omniflight Helicopters, Inc., No. 97-1524, 1998 WL 743678 (4th Cir. Oct. 23, 1998); Leonard v. Parry, 219 F.3d 25, 28 (1st Cir. 2000); Worthington v. Wilson, 8 F.3d 1253, 1257 (7th Cir. 1993)).  These cases do not, however, accurately reflect current Fourth Circuit law.

In Goodman, decided in 2007, the Fourth Circuit analyzed when an amended pleading relates back under Rule 15.  Stated in the specifics of the Rule, an amendment relates back only when it changes a party or the naming of a party, see FED. R. CIV. P. 15(c)(3); when it arises out of the same transaction as that referred to in the original complaint, see FED. R. CIV. P. 15(c)(2), (3); when it causes no prejudice to the new defendant in maintaining his defense, see FED. R. CIV. P. 15(c)(3)(A); and when the new defendant should have known that it was the party that would have been sued but for a "mistake," FED. R. CIV. P. 15(c)(3)(B).  Goodman, 494 F.3d at 470.  After discussing the holding in Western Contracting Corp., a case cited by Wazan, the Fourth Circuit stated "[t]o the extent that there is a conflict in holding, this opinion controls."  Id. at 472.  Therefore, the appropriate analysis in this case is whether Wazan received notice of the action within the time prescribed by Rule 4, and whether Wazan suffered any prejudice as a result of the delay in being named as a party.  Because Wazan did receive notice in a timely manner and did not suffer any prejudice, Goodman compels that Martin's Amended Complaint relates back to the Original Complaint's filing date.

8

First, Wazan received notice of Martin's claim against him within the time prescribed under Rule 4. Specifically, Wazan states in his affidavit filed in support of his motion that he learned of Martin's allegations in December 2017. (Doc. No. 61 at ¶ 5). His affidavit details at least two conversations he had with fellow employees of the North Carolina Department of Commerce regarding the allegations in this case. (Id. at ¶¶ 5–7). Therefore, Wazan admits that he had the requisite notice to satisfy the first element of the Goodman test.

Next, Wazan will not be prejudiced by his delayed addition to the case. Wazan also states in his affidavit that the general counsel for the Department of Commerce advised him that he expected Wazan to be sued personally. (Id. at ¶ 6). Thus, by his own sworn admission, Wazan knew in December 2017 that his actions were the subject of a lawsuit, he knew his employer expected he would be sued, and he knew or should have known that any relevant evidence should be preserved. In these circumstances, Wazan cannot now claim that he suffered prejudice due to Martin's delay in naming Wazan as a party to this case.

Finally, Wazan knew or should have known that, but for a mistake by Martin's prior counsel in the drafting of the complaint, he would have been named as a defendant in the Original Complaint. Wazan's misconduct is at the very heart of this lawsuit, as he is sole, alleged perpetrator of the alleged sexual assaults (which includes alleged repeated rapes) and other physical abuse. Moreover, again, Wazan admits in his affidavit that the General Counsel for the Department of Commerce advised him that he would likely be sued in his individual capacity. (Id. at ¶ 6). Wazan has offered no credible explanation for why he thought Martin's initial failure to name him—the alleged perpetrator of the sexual and physical abuse against Martin—as a defendant was anything but a mistake.

9

In his Motion, Wazan makes much of the fact that Martin mentioned him by name in the Original Complaint. (Doc. No. 40 at p. 7–8). According to Wazan, Martin's failure to name him as a party was therefore not a mistake covered by Rule 15 because the mistake was not a mere misnomer. Current Fourth Circuit law, however, has explicitly rejected this argument. The Fourth Circuit in Goodman declined to place the focus of the Rule 15 analysis on the type of mistake made, stating that "[t]he Rule's emphasis on notice, rather than on the type of 'mistake' that has occurred, saves the courts not only from an unguided and therefore undisciplined sifting of reasons for an amendment but also from prejudicing would-be defendants who rightfully have come to rely on the statute of limitations...." Goodman, 494 F.3d at 473. Therefore, under Goodman, the fact that Martin's mistake is not one of misnomer has no bearing on the proper analysis under Rule 15.[4] Wazan received notice of Martin's claims against him within the time provided by Rule 4, he has not been prejudiced by Martin's failure to sue him in the Original Complaint, and he knew or should have known that he would have been sued but for Martin's mistake. Therefore, Martin has met all the elements of the Goodman test for relation back.

---

[4] Although the Court does not have before it the intentions or thought process of Plaintiff's prior counsel, it seems apparent to this Court that the failure to name Wazan in the Original Complaint was clearly due to a conscious choice of whom to sue. That is, it is entirely possible (and highly likely) that the failure to name Wazan as a Defendant in the Original Complaint was simply Plaintiff's prior counsel's mistake. Some courts outside of the Fourth Circuit have held that the "mistake" provision of Rule 15 "does not encompass an attorney's mistake in choosing whom to sue." Nauroth v. S. Health Partners, Inc., No. 1:07-CV-539, 2009 WL 3063404, at *8 (S.D. Ohio Sept. 21, 2009) (citing cases). Nevertheless, this Court interprets Goodman to allow for a an "attorney mistake" for purposes of relation-back under Rule 15(c)(3), because, as the Goodman court made clear, "[t]he Rule does not concern itself with the amending party's particular state of mind except insofar as he made a mistake." 494 F.3d at 469.

In sum, the Amended Complaint relates back to the Original Complaint such that Martin's claim against Wazan is not barred by the statute of limitations.

**B. Whether Wazan is Bound by the Tolling Agreement Entered on His Behalf.**

The Court further finds that, even if the Amended Complaint did not relate back to the Original Complaint, Wazan is bound by the Tolling Agreement. From its first sentence, the Tolling Agreement leaves no doubt that it was intended to bind Wazan, stating: "The NC Department of Commerce, <u>on behalf of itself and its employee Wally Wazan</u> . . . agree that, beginning December 19, 2017, any applicable statute of limitation and/or repose relating to any claim or demand between the Parties shall be tolled...." (Doc. No. 71–1 (emphasis added)). As Wazan concedes in his memorandum in support, the parties do not dispute that the Tolling Agreement is a binding contract and that George Sherrill signed the document on behalf of the North Carolina Department of Commerce and its employee Wazan. (Doc. No. 60, p. 3). The only question before this Court is whether Sherrill served as Wazan's agent, thus legally binding him to the Tolling Agreement.

Under North Carolina law, the principal is liable on a contract duly made by his agent with a third person—(1) when the agent acts within the scope of his actual authority; (2) when the contract, although unauthorized, has been ratified; (3) and when the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his actual authority. <u>Morpul Research Corp. v. Westover Hardware, Inc.</u>, 263 N.C. 718, 721 (1965). For the following reasons, Sherrill likely had actual authority to bind Wazan to the Tolling Agreement, but even if he did not, Wazan clearly cloaked Sherrill with apparent authority sufficient to bind Wazan to the Agreement.

**1. Actual Authority**

11

A principal is liable on a contract duly made when the agent acts within the scope of his actual authority. Foote & Davies, Inc. v. Arnold Craven, Inc., 72 N.C. App. 591, 595 (1985). "Actual authority is that authority which the agent reasonably thinks he possesses, conferred either intentionally or by want of ordinary care by the principal." Harris v. Ray Johnson Construction Co., Inc., 139 N.C. App. 827, 830 (2000). "Actual authority may be implied from the words and conduct of the parties and the facts and circumstances attending the transaction in question." Id. (citing 3 Am Jur. 2d Agency § 75 (1976)).

In their affidavits, Wazan and Sherrill both admit that they discussed the Tolling Agreement before it was signed. (Doc. Nos. 61, 63). While the affidavits state that Sherrill did not seek Wazan's consent to enter the Tolling Agreement on his behalf, such a formalistic request is not required. Rather, Wazan could implicitly provide actual authority to Sherrill through his actions or words. Id. Therefore, Sherrill was able to receive actual authority to bind Wazan to the Tolling Agreement even if he did not specifically ask for and receive Wazan's consent. That appears to be exactly what happened: Wazan and Sherrill discussed the Tolling Agreement, Wazan did not instruct Sherrill not to sign it, and Sherrill thus signed it as Wazan's agent, fully cloaked in the actual authority to do so.

**2. Apparent Authority**

In any event, regardless of whether Sherrill had actual authority to bind Wazan to the Tolling Agreement, Wazan clearly cloaked Sherrill with apparent authority to do so. "The rights and liabilities which exist between a principal and a third party dealing with that principal's agent may be governed by the apparent scope of the agent's authority. . . ." Zimmerman v. Hogg & Allen, Prof'l Ass'n, 286 N.C. 24, 30–31 (1974). Apparent authority is "that authority which the principal has held the agent out as possessing or which he has permitted the agent to

represent that he possesses. . . ." Id. "[T]he determination of a principal's liability in any particular case must be determined by what authority the third person in the exercise of reasonable care was justified in believing that the principal had, under the circumstances, conferred upon his agent." Id. (citing Edgecomb Bonded Warehouse Co. v. Security Nat'l Bank, 216 N.C. 246 (1939); Norfolk So. R.R. Co. v. Smitherman, 178 N.C. 595 (1919)).

Here, from Martin's perspective, Wazan clearly cloaked Sherrill with apparent authority to enter the Tolling Agreement on his behalf. Wazan was informed that the Department of Commerce intended to enter into the Tolling Agreement before its entry, and Wazan knew the Tolling Agreement covered the statute of limitations surrounding his alleged conduct. Despite this knowledge, Wazan did not participate in the meeting with Martin's prior counsel discussing the Tolling Agreement. Rather, he chose to allow the meeting to proceed without his input. When a state agency affirmatively states that the agency will enter a Tolling Agreement on behalf of it "and its employee Wally Wazan," a plaintiff must be able to rely on the assumption that the state agency has the necessary authority to bind its employee.[5]

Here, Martin reasonably relied on the Department of Commerce's representation that it had the necessary authority to sign the Tolling Agreement on Wazan's behalf. Wazan's actions and inactions show that Martin's reliance on the Department of Commerce's apparent authority was reasonable when she agreed to enter into the Tolling Agreement herself. Therefore, Wazan clearly cloaked Sherrill with the apparent authority necessary to bind Wazan to the Agreement. For this additional reason, the motion to dismiss will be denied.

Wazan argues that, regardless of the plain language in the tolling agreement, no apparent authority could have existed based on the relationship between Wazan and the Department of

---

[5] To hold otherwise could, indeed, invite and encourage fraud in the inducement of a contract.

Commerce as employer/employee. Wazan argues that because he was a lower-level employee of the Department of Commerce, then the Department of Commerce could not have acted as his agent. Wazan argues that the Sherrill's and Wazan's affidavits make clear that neither agreed to or even imagined such a relationship. But, for purposes of <u>apparent</u> authority, Sherill and Wazan's subjective intent simply does not matter. Furthermore, the fact that Wazan was an employee of the North Carolina Department of Commerce does not mean the North Carolina Department of Commerce could never enter a contract with another party acting on behalf of its employee Wazan. The Tolling Agreement plainly states the Department of Commerce is agreeing to toll the statute of limitations "on behalf of its employee Wally Wazan." Contrary to Wazan's protestations, the language of the contract appears to mean exactly what it says, and Martin therefore could reasonably believe that the North Carolina Department of Commerce had the necessary authority to bind Wazan. The Tolling Agreement could have included only the agreement by the Department of Commerce, but it did not. Indeed, the Department of Commerce has provided no explanation for why, if it did not intend for the Tolling Agreement to bind Wazan, the Tolling Agreement specifically states that the Department of Commerce was acting on Wazan's behalf. The Court finds no possible purpose this language could serve other than what its plain language says—that the Department was agreeing to have the statute of limitations tolled "on behalf of its employee Wally Wazan." For all these reasons, the Court finds that, in addition to the fact that the relation-back doctrine applies, Wazan is bound by the Tolling Agreement and Martin's claim against him is not barred by the statute of limitations.[6]

---

[6] Alternatively, even if the Department of Commerce did not have actual or apparent authority to bind Wazan, the foregoing creates extraordinary circumstances justifying excusable delay in adding Wazan as a defendant. Therefore, the Court finds that the limitations period should be equitably tolled up to the time where Wazan was added as a defendant. See Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 549 (4th Cir. 2019) (explaining that equitable tolling rests on

14

## IV. CONCLUSION

In sum, for the reasons stated in this Order, the Court finds that Martin's claims against Wazan are not barred by the applicable statute of limitations, and the Court will therefore deny the motion to dismiss.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Motion to Dismiss for Failure to State a Claim by Defendant Wally Wazan, (Doc. No. 39), is **DENIED**.

Signed: June 2, 2020

Max O. Cogburn Jr
United States District Judge

---

"excusable delay" by the plaintiff and thus does not require "a wrongful—or any—effort by the defendant to prevent the plaintiff from suing") (citation omitted)).